UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

_____
)
K.F. by and through her parents and )
guardians, JOHN AND EMBER FRY, )
) Case No. C08-0890RSL
Plaintiff, )
v. )
) MEMORANDUM OF DECISION
REGENCE BLUESHIELD, *et al.*, )
)
Defendants. )
_____)

## INTRODUCTION

This matter was heard by the Court on September 11, 2008. Plaintiff alleges that she is entitled to sixteen (16) hours per day of in-home nursing services under a medical benefits plan governed by the Employee Retirement Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* Complaint at ¶ 1. Defendants argue that because inpatient hospitalization is not warranted under the plan, in-home nursing services are not available as a substituted benefit. Even if inpatient hospitalization were warranted, defendants maintain that there is no coverage for hourly nursing services under the terms of the plan and that there is no evidence that more than 9 hours of in-home nursing care is medically necessary. The Court has considered the administrative record, the arguments of counsel, and the remainder of the record and, being fully advised, finds as follows:

MEMORANDUM OF DECISION

## DISCUSSION

**A. STANDARD OF REVIEW**

Regence's May 23, 2008, denial of benefits will be reviewed *de novo* for the reasons stated in the Court's "Order Granting in Part Defendants' Motion for Partial Summary Judgment." Dkt. # 59 at 3-5.

Defendants have filed a motion for reconsideration of that decision. They assert that the Court's order forces the claims administrator to substantively evaluate the decision of the third-party independent review organization, in violation of state law. That is not the case. State laws mandating insurance policy terms apply to insurance contracts purchased for plans subject to ERISA. See, e.g., UNUM Life Ins. Co. of Am. v. Ward, 526 U.S. 358, 375-76 (1999); 29 U.S.C. § 1144(b)(2)(A). Washington has created an external appeal procedure for participants who disagree with the administrator's denial of benefits: the statute compels insurers to implement the independent review organization's determination. RCW 48.43.535. The Court's decision in no way calls into doubt or alters that imperative. Regence had no authority or discretion to reevaluate the decision of the independent review organization ("IRO"). It was, by law, required to implement the IRO's determination, which it did on May 23, 2008.

It is the effect that the mandatory implementation of the IRO's decision has on the standard of review in this case that troubles defendants. Defendants argue that utilizing a *de novo* standard would be "a drastic departure from the procedures under ERISA for reviewing benefits decisions . . . ." Dkt. # 61 at 4. The default standard of review under ERISA is *de novo*, however. A deferential standard of review is not guaranteed by ERISA (Rush Prudential HMO, Inc. v. Moran, 536 U.S. 355, 385-86 (2002)), and any grant of discretion must be unambiguously set forth in the plan (Kearney v. Standard Ins. Co., 175 F.3d 1084, 1090 (9th Cir. 1999)). Because the requirements of RCW 48.43.535 are incorporated into the plan, the scope and nature of the administrator's discretion are far from clear when the participant

MEMORANDUM OF DECISION            -2-

exercises her right to an external appeal. The Supreme Court recognized that state statutes creating independent appeal procedures, such as RCW 48.43.535, could subject the plan to different standards of review depending on whether the participant appealed directly from the internal process or waited until after the external review was completed. Rush Prudential, 536 U.S. at 384. This dichotomy is neither unfair nor unexpected. Even when the plan unambiguously grants discretion to the administrator, only those decisions that actually involve the exercise of discretion are entitled to deference from the judiciary. Lamantia v. Voluntary Plan Adm'r, Inc., 401 F.3d 1114, 1122 (9th Cir. 2005). The implementation of the IRO's decision on May 23, 2008, did not involve the interpretation of the plan or a determination of eligibility for benefits. Because no discretion was or could be exercised, deference is not appropriate. The Court will, therefore, review the administrative record to determine whether Regence's final coverage decision was correct or incorrect. Abatie v. Alta Health & Life Ins. Co., 458 F.3d 955, 963 (9th Cir. 2006).

**B. MEDICAL NECESSITY**

It is undisputed that K.F. requires skilled nursing care to survive. At the time of this decision, K.F. is an eleven month old child diagnosed with diastrophic dysplasia. Diastrophic dysplasia is a form of dwarfism associated with short limbs, micrognathia (abnormally small lower jaw), cleft palate, severe spinal curvature, hand and feet abnormalities, and tracheobronchiomalacia (collapsible airway). K.F. has been tracheostomy dependent since she left the hospital in December 2007. The record shows that without supervision from adequately-trained personnel, secretions would build up in K.F.'s tracheostomy, her oxygen saturation levels would drop, and she would die from acute airway obstruction. Even with constant medical care, K.F. suffers episodes of hypoxia that require training to identify and treat. In addition, the cartilaginous rings of K.F.'s trachea are poorly formed, giving rise to a constant risk that her trachea will collapse. She is, in short, unable to protect her airway and must rely on a combination of mechanical and medical assistance to continue breathing throughout the day.

MEMORANDUM OF DECISION -3-

Pursuant to Section 5.9.2 of the plan, Regence will pay for in-home services as an alternative to hospitalization if such care can be provided at equal or lesser cost.[1] Benefits under Section 5.9.2 "will only be provided when the Member's condition is serious enough to require Inpatient care and the Member could qualify for the Inpatient Benefits of this Contract . . . ." The question then becomes whether K.F.'s condition is serious enough to require inpatient care, *i.e.*, whether admission to the hospital is medically necessary.

Medical necessity is defined by the plan as a service that meets all of the following criteria:

- It is required to diagnose or treat the Member's condition.
- It is consistent with the symptom or diagnosis and treatment of the condition.
- It is the most appropriate supply or level of service that is essential to the Member's needs.
- When applied to an Inpatient, it cannot be safely provided to the Member as an outpatient, including diagnostic studies.
- It is not an Investigational Service or Supply.
- It is not primarily for the convenience of the Member or provider.

Regence argues that K.F. does not satisfy the first criteria of "medical necessity." As noted above, however, K.F. would not survive without round-the-clock skilled care: suctioning and constant monitoring/intervention are necessary to treat her condition. Regence argues that hospitalization is not necessary to treat K.F.'s condition because she has not been hospitalized since she was discharged in November 2007. The only reason K.F. has stayed out of the hospital, however, is because her parents have stepped forward to provide or obtain medical services for her when Regence declined to do so. Regence's simplistic analysis would force

---

[1] Defendants argue that the coverage afforded by Section 5.9.2 is far more limited than this summary suggests. Plan interpretation issues are discussed in section C of this Order.

MEMORANDUM OF DECISION -4-

parents to stand by and watch as their child's health deteriorates to the point where acute medical intervention becomes necessary just so they could prove that her condition is serious enough to require hospitalization. This cannot be right. There is no dispute regarding K.F.'s need for skilled nursing care: Regence would simply prefer to have her parents provide those services since they have shown an ability to do so. The fact that K.F.'s parents have cobbled together twenty-four hours of care for their child through extraordinary efforts does not mean that skilled nursing services are not required to treat K.F.'s condition. The Court finds that K.F.'s condition is serious enough to require inpatient care, and Regence cannot escape its contractual obligation to provide substituted healthcare services under Section 5.9.2 simply because others have stepped forward to provide the necessary care.[2]

Earlier in the litigation, defendants also argued that K.F. had to meet the so-called Milliman criteria[3] in order to show that she qualified for inpatient care. There is no evidence that the Milliman criteria are part of, or were incorporated into, the plan. They cannot, therefore, impose coverage limitations or restrictions that are inconsistent with those set forth in the plan or that were not disclosed to participants. <u>Saltarelli v. Bob Baker Group Med. Trust</u>, 35 F.3d 382, 386-87 (9th Cir. 1994). Even if Regence were entitled to rely on the Milliman

---

[2] K.F. needs skilled care to survive. Defense counsel acknowledged as much at trial, and the administrative record contains multiple references to K.F.'s need for tracheostomy care throughout the day. Rao Decl. at 192-94, 279, 282, 746-48, 1035-36, 1151-52, 1206-07, 1247, and 1266-67. Instead of focusing on K.F.'s needs when determining whether inpatient care was necessary to treat her condition, Regence improperly relied on the fact that her parents had been trained to provide suctioning, tracheostomy tube maintenance/replacement, and emergent interventions when determining medical necessity. Rao Decl. at 1247 and 1266-67. Regence's analysis, if adopted, would effectively abrogate its contractual obligation to provide medical care if any third party proved capable of providing such care. Even under an abuse of discretion standard, the Court would conclude that Regence's coverage determination was unreasonable.

[3] Milliman, Inc., produces care guidelines for hospitals, health plans, and physicians. According to Milliman's website, its products are updated annually by a team of healthcare professionals and provide authorization criteria, care pathways, and case management tools to its customers. Defendants rely on a section of these guidelines entitled "Clinical Indications for Admission to Inpatient Care."

MEMORANDUM OF DECISION -5-

criteria when determining whether K.F.'s condition was serious enough to require inpatient care, the record shows that K.F. is unable to protect her airway. Because she exhibits one of the clinical indications for admission to the hospital, the Milliman criteria are satisfied.

At trial, defendants took the position that substitution of home health care services under Section 5.9.2 is not appropriate because such care would not, in fact, be less expensive than hospitalization. There is no evidence in the record to support this assertion, and reasonable assumptions regarding the comparative costs of inpatient services versus home health care services suggest otherwise. <u>See</u> AR 1035. Defendants seem to assert that it would be cheaper to pay for multiple hospitalizations to stabilize K.F. whenever she had an acute medical emergency and her parents had to call 911 or drive her to a hospital emergency room than to provide on-going treatment to keep her out of distress in the first place. This argument does not withstand scrutiny. Under the Milliman criteria, discharge would be appropriate only when the respiratory treatments are no longer needed or could be provided at a lower level of care. Given her on-going need for mechanical and medical interventions, the next level of care, such as in-home health services, would be a viable option only if Regence substitutes benefits so that K.F. can receive the medical care she continues to need. There is no evidence from which one could conclude that K.F.'s doctors would release her without some assurance that the home was a medically-appropriate option. In fact, the record supports the opposite conclusion: when K.F. was originally discharged from the hospital, it was with the understanding that Regence would provide 16 hours of in-home care to supplement the eight hours the parents could provide. K.F.'s doctors have consistently objected to every reduction in the services provided by Regence below this 16 hour threshold. Defendants' comparative cost argument is unpersuasive and unsupported.

## C. PLAN INTERPRETATION

Defendants argue that, even if K.F. could qualify for inpatient care, there is no coverage for hourly nursing services under the plan. Although Section 5.9.2 appears to promise

MEMORANDUM OF DECISION            -6-

that home health care can, at the option of the insured, be substituted for inpatient services, defendants rely on the reference to "Benefits of this Contract" in the first sentence of Section 5.9.2 to limit this promise. Defendants argue that the phrase incorporates into Section 5.9.2 all of the limitations and exclusions set forth in Sections 6 and 8.15, including exclusions for hourly nursing services.

ERISA plans "are to be interpreted in an ordinary and popular sense as would a [person] of average intelligence and experience." Simkins v. Nevada Care, Inc., 229 F.3d 729, 734-35 (9th Cir. 2000) (internal quotation marks omitted) (alteration in original). Coverage should be liberally construed to protect the interests of beneficiaries (1 ERISA Leg. History 604, S. Rep. No. 93-127, 93d Cong., 1st Sess. 18 (1973), *reprinted in* 1974 U.S. Code Cong. & Admin. News 4838, 4854) and to ensure that their reasonable expectations are met (Winters v. Costco Wholesale Corp., 49 F.3d 550, 554 (9th Cir. 1995)). "[A]mbiguous language is construed against the insurer and in favor of the insured." McClure v. Life Ins. Co. of N. Am., 84 F.3d 1129, 1134 (9th Cir. 1996).

Section 5.9.2 states that "[a]s an alternative to hospitalization or other Inpatient care, the Benefits of this Contract . . . will be provided for substitution of home health care when provided in lieu of hospitalization or other Inpatient care . . . ." The term "Benefits" is defined as "payment by [Regence] for services and supplies covered under the Contract." Ignoring certain syntactical problems, the first sentence of Section 5.9.2 promises that, as an alternative to hospitalization, payment for services covered under the plan will be provided for home health care. The sentence could be interpreted to mean, as defendants suggest, that only services authorized by the plan and not subject to any exclusion will be provided at home. Thus, even though hospitals provide nursing to inpatients, those services would be unavailable if home care were substituted for hospitalization under Section 5.9.2 because Section 6.1.22 and Section 8.15.4 expressly exclude payment for hourly nursing services. This reading would make Section 5.9.2 redundant: if the section does no more than authorize the provision of services that are

MEMORANDUM OF DECISION                -7-

already provided elsewhere in the contract, no additional benefit is granted. It would also make Section 5.9.2's promise of substituted home care illusory in most circumstances: if nursing services will never be provided in the home, very few inpatients would be able to take advantage of the repeated promises of substituted services.

More importantly, defendants' interpretation relies on a bare reference to "Benefits of this Contract" to import critical limitations into an otherwise broad benefit provision. The doctrine of reasonable expectations prevents such slight of hand:

> [a]n insurer wishing to avoid liability on a policy purporting to give general or comprehensive coverage must make exclusionary clauses conspicuous, plain, and clear, placing them in such a fashion as to make obvious their relationship to other policy terms, and must bring such provisions to the attention of the insured.

Saltarelli, 35 F.3d at 386. The bare reference to "Benefits of this Contract" is insufficient to alert a reasonable insured that limitations on those benefits are intended. Nor is it clear that the reference to "Benefits of this Contract" actually affects the meaning of Section 5.9.2 as defendants suggest. Utilizing the plan definitions, Section 5.9.2 promises that payment for services under the contract will be provided for substitution of home health care. The most natural reading of Section 5.9.2 is that Regence will pay for in-home services as an alternative or substitute to the covered hospitalization or inpatient care benefits offered under the Contract. This interpretation construes any ambiguities in favor of the insured, comports with her reasonable expectations, and prevents plaintiff from expanding the scope of hospitalization coverage beyond what the plan allows, while giving substance to the promise of substituted health benefits.

**D. HOURS OF HOME CARE**

Having determined that K.F. has a contractual right to substitute home health care for the hospitalization benefits provided by the plan, the Court finds no contractual or record support for defendants' contention that Regence has to provide only nine hours of in-home care per day. As discussed above, K.F.'s condition is constant: without round-the-clock mechanical

MEMORANDUM OF DECISION -8-

and medical support, she will not survive. Twenty-four hours of skilled nursing care is medically necessary, and Regence is contractually obligated to provide it. The parents' willingness to relieve Regence of this obligation for eight hours every day is not a waiver of the coverage and does not justify Regence's attempt to foist upon them the duty to provide skilled nursing care for longer than they feel capable.[4]

### E. AWARD OF BENEFITS

As of May 7, 2008, the date on which Regence terminated K.F.'s in-home nursing services, she was entitled to the requested sixteen hours of in-home nursing care in lieu of hospitalization under Section 5.9.2 of the plan. There is no evidence that K.F.'s situation has changed: in fact, the declarations submitted during the preliminary injunction proceeding show that K.F. continues to need around-the-clock support and that her parents have been compelled to retain a nursing agency, New Care Concepts, to provide care. Defendant Board of Trustees of the MBA Group Insurance Trust is therefore ORDERED to reimburse plaintiff for the hours of care K.F. has received from the nursing agency since May 7, 2008. Regence, as the claim administrator, shall continue to provide sixteen hours of in-home nursing care per day until K.F.'s condition is no longer serious enough to require inpatient care (or the lifetime benefit under the plan is exhausted). Under the terms of the plan, Regence is entitled to reevaluate K.F.'s medical condition in the future and to make eligibility determinations based on then-

---

[4] At trial, defendants repeatedly asserted that the skills and abilities of K.F.'s parents somehow abrogate the coverage that might otherwise exist under the plan. In attempting to explain this theory, defendants pointed out that an insurer would not have to provide in-home food service for a child simply because its parents had failed to feed it. If, however, the child became critically malnourished/ dehydrated and required inpatient care to stabilize her condition, the hospitalization benefit of the plan would likely be implicated. More importantly, K.F. is not asking Regence to provide basic necessities for which parents are generally held responsible. The care K.F. needs is beyond that which an unskilled layperson can provide and falls within the coverage provisions of the plan. K.F.'s parents, who are not medically-trained, have learned certain skills which they are willing to use, and have been using, to care for their child. Their skills do not, however, impact the coverage analysis. Unlike the obligation to feed a child, which falls on the parents, the obligation to provide nursing services falls on Regence under the terms of the plan, making the analogy inapposite.

MEMORANDUM OF DECISION            -9-

existing facts. Regence must, however, make medical necessity determinations in keeping with the analysis set forth above: the fact that K.F.'s parents can provide certain nursing services does not and will not relieve Regence of its contractual obligation to provide care.[5]

**CONCLUSION**

For all of the foregoing reasons, defendants' motion for reconsideration (Dkt. # 61) is DENIED and the Clerk of Court is directed to enter judgment in favor of plaintiff and against defendants.

Dated this 19th day of September, 2008.

Robert S. Lasnik
United States District Judge

---

[5] Defendants argue that the record cannot support an award of future benefits because K.F.'s medical needs will likely change as she grows. Section 1132(a)(1)(B) of ERISA specifically authorizes the Court to clarify rights to future benefits under the plan, while Section 1132(a)(3) authorizes actions against the claim administrator to enjoin conduct that violates the terms of the plan. The Court is not declaring an immutable right to coverage or otherwise abrogating Regence's ability to reevaluate K.F.'s needs in the future. It is simply clarifying K.F.'s right to benefits under the facts presented here and precluding Regence from utilizing the parent-centric analysis of medical necessity that resulted in its incorrect and unreasonable coverage denial.

MEMORANDUM OF DECISION -10-